**ACME MARKETS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (PURCELL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 17, 2003.

Decided Feb. 20, 2003.

Reargument En Banc Denied April 14, 2003.

---

Michael T. Dolan, Philadelphia, for petitioner.

John J. Stanzione, Downingtown, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Acme Markets, Inc. (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) granting Bard Purcell's (Claimant) claim petition because the back injury he suffered at home was work-related.

Claimant was hired by Employer in 1978 and initially worked as a produce clerk. In the early 1980's, he was employed as a night crew clerk and night crew manager. In those positions, he was responsible for unloading merchandise from tractor trailers and stocking the merchandise on the store shelves. The merchandise would be on pallets that would be removed from the tractor trailers by a forklift, and Claimant would then transport the merchandise on the pallet onto a hand truck. He would then use the hand truck to transport the merchandise to the store shelf where he would lift the merchandise from the hand truck to place it on the shelf. The unloading of the pallets of merchandise and the stocking of the merchandise required repetitive lifting of up to 40 pounds and twisting.

On July 16, 1999, Claimant filed a claim petition alleging he suffered a work-related low back injury which manifested itself in severe physical symptoms while he was at home on June 15, 1998. He alleged that the injury occurred as a result of continuous and daily repetitive bending, lifting and twisting over a substantial period during his work as a night crew stocker and manager. Claimant sought total disability benefits from June 17, 1998 through March 28, 1999, the date he returned to work at his pre-injury wages. Employer filed an answer denying the allegations and specifically denying that Claimant was injured at work and that there was a work-related injury.

At the hearing before the WCJ, Claimant testified that his job with Employer for over 20 years required him to do repetitive heavy lifting and twisting, and that he had previously suffered low back injuries while working for Employer in 1984, in 1988 and

in 1993 or 1994, all resulting in about four to six weeks of disability. He further stated that following those injuries, he had continual problems with his lower back and had trouble lifting and bending. Consequently, Claimant stated that he took Advil approximately every other day during the year prior to June 15, 1998. He continued stating that while at home on June 15, 1998, he felt a severe, sharp pain in his lower back when he got up from the floor where he had been sitting for approximately two hours while assembling a filing cabinet for his wife. Claimant stated that he notified Employer that he had been injured at home and requested an application for non-work-related sickness and injury benefits which he received and filled out indicating that his injury was not due to his employment and had occurred in his living room at home. Claimant stated that he underwent surgery for his back on January 13, 1999, and returned to work on March 28, 1999. He explained, however, that although he had not suffered a loss in wages, he continued to have low back pain, especially when bending and lifting, and did not perform any heavy physical activities. He also stated that he continued to take Advil almost every day and wore a back brace while at work. Claimant admitted that prior to the June 15, 1998 incident and following his previous back injuries, he golfed approximately two times a week but now he only golfed once a week.

In support of his claim petition, Claimant offered the expert testimony of Michael Sugarman, M.D. (Dr. Sugarman), a board-certified neurosurgeon, who performed his back surgery. Dr. Sugarman testified that he performed diagnostic studies on Claimant following the June 15, 1998 injury which indicated that Claimant had a disc herniation at L4–5. He also diagnosed Claimant with degenerative changes in his lumbar spine at L3–4, L4–5 and L5–S1. Dr. Sugarman explained that he performed an L4–5 disectomy on Claimant on January 13, 1999, and that on March 19, 1999, he authorized Claimant to return to work with limited bending and lifting and no repetitive twisting or bending. Dr. Sugarman opined that the type of work activities Claimant performed over the substantial length of time that he performed them caused deterioration in his lower back resulting in the June 15, 1998 injury. He acknowledged that Claimant's recreational activities would have contributed to the degenerative process, but that the amount of time devoted to performing work activities far outweighed the time he devoted to golfing, so that his work activities were the primary cause of the degeneration.

In its defense, Employer presented the expert testimony of Karl Rosenfeld, M.D. (Dr. Rosenfeld), a board-certified orthopedist, who examined Claimant on January 12, 2000. Dr. Rosenfeld admitted that Claimant suffered prior low back injuries in the 1980's, and admitted that at the end of his examination of Claimant, based upon all the information he had and his own examination, Claimant's injury was due to years of work with Employer. However, Dr. Rosenfeld stated that he changed his opinion as a result of a phone conversation he had with Employer's counsel following the examination in which he learned that Claimant engaged in golf and other recreational activities up until the June 15, 1998 incident. Dr. Rosenfeld stated that as a result of that conversation, he believed that Claimant's 20 years of work with Employer did not contribute to his low back injury, but instead, the single incident of getting up from the floor on June 15, 1998 was the sole cause of his condition. Dr. Rosenfeld stated that because Claimant was able to engage in recreational activities, including golf, prior to June 15, 1998,

that incident on June 15, 1998, was the sole cause of his injury.[1]

■ The WCJ found the testimony of Dr. Sugarman credible and rejected Dr. Rosenfeld's testimony, stating the following:

This Judge does not accept Dr. Rosenfeld's testimony as credible. First, Dr. Rosenfeld does not admit that the herniated disc is the cause of Claimant's disabling pain. If this is true, then this supports Dr. Sugarman's conclusion that Claimant's history of physical work caused a degenerative process which resulted in severe physical deterioration on June 15, 1998. Secondly, Dr. Rosenfeld initially admitted to the Claimant that his work activities caused his lower back condition. Only after a phone call to Employer's attorney did Dr. Rosenfeld change his position. Thirdly, it is not credulous to think that twenty years of forty hours per week heavy physical labor, as confirmed by Employer's own witness, contributed nothing to Claimant's lower back condition but that one hour of sitting on the floor on June 15, 1998 caused all of Claimant's injury. The magnitude of Claimant's work activities and the length of time he was performing these work activities make it more likely that work caused his lower back injury than simply sitting on the floor for one hour and getting up. Finally, Dr. Rosenfeld admits, despite Employer's efforts to link golfing activities to Claimant's injury, that golf had no part in causing Claimant's lower back condition.

(WCJ's April 10, 2001 decision, finding of fact 13.) Employer appealed to the Board which affirmed the WCJ's decision. Employer then filed this appeal arguing that the WCJ and Board erred in awarding Claimant benefits because his back injury did not arise in the course and scope of his employment and was not work-related.[2]

■ In order for a claimant to establish a right to compensation, Section 301(c)(1) of the Workers' Compensation Act (Act)[3] requires that the claimant prove the existence of an employment relationship during which an injury arose in the course of the employment and was related to the employment. In *Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation*, 31 Pa. Cmwlth.329, 376 A.2d 271, 273 (1977), citing Section 301(c)(1) of the Act, we defined the term "injury" and "injury arising in the course of employment", stating:

"The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto ... The term 'injury arising in the course of his employment,' as used in this article ... shall include all ... injuries sustained while the employe is actually engaged in the further-

---

1. Employer also offered the testimony of Ronald Kenney Massey (Massey) who worked with Claimant for 22 years and was familiar with Claimant's job duties. Although he was called to rebut Claimant's testimony, he admitted that Claimant's testimony was "basically true" and agreed that Claimant's job as night crew manager was physically demanding. Massey also confirmed that Claimant suffered from previous back injuries while working for Employer and that Claimant golfed.

2. Our scope of review of the Board's order is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Sheridan v. Workmen's Compensation Appeal Board (Anzon)*, 713 A.2d 182 (Pa. Cmwlth.1998).

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1).

ance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

We then explained when an injury was considered to have been sustained in the course of employment, stating:

Injuries may be sustained in the course of employment in two distinct situations: (1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, or (2) where the employee although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer, or

upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

Whether an employee is acting within the scope of his employment is a question of law that is based upon findings of fact. *Pesta v. Workmen's Compensation Appeal Board (Wise Foods)*, 153 Pa.Cmwlth.616, 621 A.2d 1221 (1993).

 In this case, no evidence was presented that Claimant was doing anything to further his Employer's business when he was injured because Claimant admitted he was injured after sitting on his living room floor for two hours while putting a filing cabinet together for his wife.[4] Claimant cites no cases, and there are no cases to support his contention that, because he offered medical evidence linking his home injury to his work activities, he should be compensated.[5] Were that the case, an employee could allege a work-related injury suffered at home while pur-

---

4. We note that an activity performed at home is not per se outside the course of employment. *See City of Harrisburg v. Workmen's Compensation Appeal Board (Gebhart)*, 532 Pa. 592, 616 A.2d 1369 (1992) (police officer shot while cleaning his weapon at home entitled to compensation because he had no place to store weapon at work). However, the activity being performed at home must still further the employer's business.

5. There are cases where claimants have suffered heart attacks at home and have been awarded compensation; *see e.g., Krawchuk v. Philadelphia Electric Company*, 497 Pa. 115, 439 A.2d 627 (1981); *Haverford Township v. Workmen's Compensation Appeal Board (Angstadt)*, 118 Pa.Cmwlth.467, 545 A.2d 971 (1988); *Rizzo v. Workmen's Compensation Appeal Board (Pittsburgh Board of Education)*,

69 Pa.Cmwlth.92, 450 A.2d 291 (1982). However, in those cases, it was either proven that the claimant was furthering the employer's business or if the claimant was not furthering the employer's business, that the claimant suffered from stress and pressure at work immediately prior to coming home and suffering the attack, or the stress at work day-to-day was excessive. Here, Claimant was not furthering Employer's business and there was no precipitating factor causing Claimant's low back injury. (We note that *Farmery v. Workers' Compensation Appeal Board (City of Philadelphia)*, 776 A.2d 349 (Pa.Cmwlth. 2001) overruled *Krawchuk* in part by now requiring the claimant prove that abnormal working conditions caused the stress which was a significant contributing factor to the onset of the heart attack he suffered.)

suing personal activities if he had a resulting injury even remotely similar to a previously documented ailment that occurred while at work. That is not what the legislature intended when it required that the employee actually be engaged in the furtherance of the employer's business or affairs when injured while either on or off the employer's premises, or, if not engaged in the furtherance of business, that the employee be on the employer's premises when injured. Moreover, the WCJ never made a finding that Claimant was in the course and scope of his employment when injured, but only found that he suffered a work-related injury. Because Section 301(c)(1) of the Act requires that a claimant be injured in the course and scope of his employment in order to receive workers' compensation benefits, and Claimant was not injured while actually engaged in the furtherance of Employer's business or affairs, he was not entitled to receive benefits.

Accordingly, the order of the Board is reversed.

### *ORDER*

AND NOW, this *20th* day of *February*, 2003, the order of the Workers' Compensation Appeal Board, dated August 14, 2002, at No. A01–1290, is reversed.